UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| HEATHER K.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-396-RLY-MJD |
| | ) | |
| FRANK BISIGNANO, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Claimant Heather K. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 423(d). Judge Richard L. Young has designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 11.] For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that the Court **REVERSE** and **REMAND** the decision of the Commissioner.

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

## I. Background

Claimant applied for DIB in June 2022, alleging an onset of disability as of March 13, 2021. [Dkt. 7-5 at 5.] Claimant's application was denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Gladys Whitfield ("ALJ") on February 1, 2024. [Dkt. 7-2 at 46.] On March 4, 2024, the ALJ issued her determination that Claimant was not disabled. *Id.* at 27. The Appeals Council then denied Claimant's request for review on January 6, 2025. *Id.* at 2. Claimant timely filed her Complaint on February 28, 2025, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is

not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then she need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

The Seventh Circuit recently set forth the proper standard of review in an appeal of the denial of disability benefits as follows:

> [W]e review the ALJ's decision deferentially, affirming if its conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); *Deborah M. [v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)]; *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (ALJ's residual functional capacity determination "must be supported by substantial evidence in the record"). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). While we do not reweigh evidence, we conduct a critical review because a decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In addition, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it. *See Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

*Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). This is the standard the Undersigned will apply in this case.

### III. ALJ Decision

ALJ Whitfield first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of March 24, 2021. [Dkt. 7-2 at 29.] At step two, the ALJ

found that Claimant had the following severe impairments: "conversion disorder with non-epileptic seizures, headaches/migraines, depressive disorder, anxiety disorder, and panic disorder." *Id*. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id*. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except never climb ladders, ropes, or scaffolds; avoid exposure to extreme cold and heat; no strobing or flashing lights in the ordinary course of business; noise level not to exceed level 3; no open flames or large bodies of water; avoid all use of hazardous moving machinery and exposure to unprotected heights; no job where driving or operating a motorized vehicle is required to perform the functions of the job; can perform simple, routine, repetitive tasks; no team work; no work requiring a specific production rate such as assembly line work or work that requires hourly quotas; occasional interaction with the general public, coworkers, and supervisors; no direct interaction with the public to perform the essential functions of the job; and no more than occasional routine work place changes.

*Id.* at 32.

At step four, the ALJ found that Claimant was not able to perform her past relevant work during the relevant time period. *Id*. at 39. At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id*. at 40. Accordingly, the ALJ concluded Claimant was not disabled. *Id.* at 41.

## IV.  Discussion

Claimant argues that the ALJ erred in her assessment of claimant's subjective symptoms. The Undersigned agrees.

When assessing a claimant's subjective symptoms, an ALJ must complete a two-step process. First, the ALJ must "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's

4

symptoms, such as pain." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3. Here, the ALJ found that there are such impairments. [Dkt. 7-2 at 37.] Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* The ALJ will not evaluate an individual's symptoms based solely on objective medical evidence unless the objective medical evidence supports a finding that the claimant is in fact disabled. *Id.* at *4-5. The ALJ will consider factors including, but not limited to, the claimant's daily activities and the effectiveness of the claimant's medication or treatment. *Id.* at *7-8. The court must afford the ALJ's determination special deference, and it will only reverse if the ALJ's determination is patently wrong. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

Claimant suffers from conversion disorder with non-epileptic seizures as well as migraine headaches. There is no question that a finding of disability would have been required if the ALJ had fully credited Claimant's testimony and other evidence with regard to the symptoms caused by these impairments, as her testimony makes it clear that she would be unable to work due to those symptoms about once per week, which is more than the one absence per month that the vocational expert testified would be tolerated by employers. *See* [Dkt. 7-2 at 59-62] (Claimant's testimony)]; *id.* at 72 (vocational expert's testimony). This testimony is largely consistent with the Certification of Health Care Provider form completed by Claimant's treating neurologist, Dr. Riley Snook, in August 2020 in support of Claimant's application for Family and Medical Leave,

wherein Dr. Snook opined that Claimant would be absent on three full work days per month. [Dkt. 7-7 at 150.][2]

But the ALJ did not fully credit Claimant's testimony. Rather, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Dkt. 7-2 at 37.] The ALJ gave the following explanation for that determination:

> The record shows the claimant has a long history of conversion disorder with nonepileptic seizures. These seizures were noted to be controlled in the past with psychotherapy, but she has not been in the therapy in many years. She was repeatedly encouraged to seek out psychological/psychiatric treatment but engaged in only three audio therapy sessions in December 2022. She testified she is on a waiting list for a counselor. She takes no medication for seizures. She reported she typically manages the seizure like episodes at home by lying down before she has one because she can feel them coming on. She also has a long history of depression and anxiety. She has been prescribed venlafaxine for years and has been on the same dose for many years. She requested in April 2023 that her venlafaxine dose be increased, and this was provided. She also has a long history of migraines/headaches treated with prescribed medication, Topamax (topiramate), which has been prescribed at the same dose for several years and without change during the period at issue. Despite her complaints in April 2022 of migraines continuing to be a problem with greater than 15 headache days per month and two severe migraines per month, it was noted that she was did not feel that she wanted to add any further medication at that time. She reported she was managing her frequent daily headaches with over-the-counter medication. The physical examination findings by her treating neurologist during the period at issue have been normal, including normal cognition, normal speech and language, normal recent and remote memory, normal attention and concentration, normal fund of knowledge, normal strength, tone, and reflexes in the limbs, normal sensory exam, and normal stance and gait.
>
> The claimant asserts the onset of disability in March 2021; however, there is no evidence of any treatment between July 2020 and April 2022. During the period at issue, the only treatment she had consists of two routine yearly neurology follow ups in April 2022 and April 2023 and three therapy sessions in December

---

[2] The ALJ did not acknowledge this opinion from Dr. Snook in her opinion.

>2022.  The claimant has reported significant medication side effects, but there is no evidence of any reports of medication side effects to her prescribing medical provider.  The claimant was noted to have told her therapist that she did not feel her medication for depression and anxiety was helpful, but she also admitted she had not been consistent with taking her medication in part due to uncomfortable side effects.  The therapist advised her to move up her medication management appointment, but she did not appear until her routine yearly neurology follow up in April 2023 and made no mention at that time of any medication side effects or inconsistent compliance with prescribed medication.  Again, it was also noted in April 2023, that the claimant reported that she has had non-epileptic seizures for years that seem to largely resolve when she was in active psychotherapy (10F).
>
>At the consultative psychological evaluation, her abstract reasoning, verbal skills, fund of general information, long-term memory, and judgment were all noted to appear adequate, but she did have some deficits of recent memory and concentration.  Further, the claimant's activities of daily living appear inconsistent with her asserted levels of symptom frequency and severity.  She handles her personal care with some help from her husband with bathing and dressing when she has a seizure episode and her husband generally does the cooking and shopping, but she does household chores and laundry, runs errands, manages her money without problems, enjoys reading daily, goes to her daughter's softball games, drops off and picks up her daughter, drives sometimes, prepares herself simple meals/food, and goes out to eat, to concerts, to the movies, and to sporting events.

[Dkt. 7-2 at 37-38].

Claimant argues that the ALJ failed to comply with SSR 16-3p, which governs how an ALJ is to evaluate a claimant's subjective symptoms allegations.  It provides, in relevant part:

>We will consider an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities . . . . Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.
>
>In contrast, if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.  **We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without**

> **considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints**.

*Soc. Sec. Ruling 16-3p: Titles II & Xvi: Evaluation of Symptoms in Disability Claims,* SSR 16-3P (S.S.A. Mar. 16, 2016) (emphasis added) ("SSR 16-3p"); *see also Shauger v. Astrue,* 675 F.3d 690, 696 (7th Cir. 2012) (citations omitted) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference.").[3]

    The Undersigned agrees that the ALJ failed to comply with this directive.  The ALJ did not inquire about the reasons why Claimant did not continue with psychotherapy on a consistent basis and otherwise comply with the recommendations of her medical care providers.  These reasons could have included (for example) Claimant's inability to afford the recommended treatment, difficulty finding treatment providers, and the effects of Claimant's mental health issues on her motivation to comply with the suggested treatment.[4]  *See id.* (listing various "reasons an individual may not have pursued treatment"); *Shauger,* 675 F.3d at 696 ("The claimant's 'good reasons' may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects.'"); *Martinez v. Astrue,* 630 F.3d 693, 697 (7th Cir. 2011)

---

[3] The Undersigned notes that the Seventh Circuit cites SSR 96-7p for this proposition and SSR 96-7p has been superseded by SSR 16-3p.  However, SSR 16-3p retained the relevant requirement.

[4] A medical note from July 2020 states that Claimant "does not have a psychiatric provider currently" and notes that "the nurse practitioner she was [seeing has] left the practice and she is trying to find someone new."  [Dkt. 7-7 at 135.]

8

(noting ways in which mental illness makes consistency in treatment particularly challenging).

This is reversible error.

The Commissioner makes several arguments, each of which is unavailing. First, the Commissioner argues:

> Plaintiff insists that for the ALJ to have considered Plaintiff's noncompliance with therapy, the ALJ had to ask Plaintiff about this factor at her administrative hearing (Brf. at 13-14). Plaintiff is mistaken. SSR 16-3p does not require an ALJ to ask a claimant about her noncompliance; rather, it provides that an ALJ must *consider* possible reasons for it. *Id.* The ALJ just cannot make assumptions about the claimant's noncompliance without asking the claimant about the reasons for it. *Id.* Here, the ALJ did not make assumptions about Plaintiff's noncompliance, but considered reasons why Plaintiff was not always compliant. Throughout her analysis, the ALJ considered possible reasons for noncompliance, such as her being laid off during the COVID-19 pandemic and her losing her insurance for co-pays, but also considered that Plaintiff did attend telehealth therapy appointments that did not require in-person office visits and did have some source of income in that her husband provided her $800 per month (Dkt. 7-2 at p. 35-36, Tr. 34-35). Thus, Plaintiff's argument is unsupported and unavailing.

[Dkt. 13 at 7-8.] It is true that an ALJ does not necessarily have to ask about a claimant's reasons for non-compliance at the hearing, but the "possible reasons" that an ALJ must consider cannot just be those theorized by the ALJ; they must be found in the record. And the ALJ must demonstrate that she considered **all** of the reasons that are in the record and nonetheless determined that it was appropriate to draw an adverse inference from the claimant's failure to comply with treatment recommendations. The ALJ did not do so here, other than perhaps her note that "claimant does have some income as her husband gives her approximately $800.00 per month." But having "some income" does not equate to being able to afford regular psychotherapy visits on a long-term basis. Indeed, the doctor's note from which this information comes reads as follows:

> She is currently married, but reports that she and her husband keep separate incomes and separate accounts. He "gives her" $200 per week and she is

9

>struggling to adjust to those limits that is less than half what she is used to receiving when she was employed.

[Dkt. 7-7 at 176.] There is no indication of what household expenses Claimant was expected to cover with this allowance from her husband, but there are many notations in the record that Claimant's finances were a struggle and affected her ability to afford medical treatment. *See id.* at 175 (noting "continued anxiety regarding finances); *id.* at 16 ("We were considering adding Abilify last month, however she is unable to afford and she did not purchase."); *id.* at 133 ("She used Emgality for a year but lost the co-pay assistance and cannot afford to use it any further.").

Surprisingly, the Commissioner also argues that "the ALJ did not hold Plaintiff's noncompliance against her but instead noted psychotherapy's effectiveness in controlling her seizures versus when she ceased attending therapy (Dkt. 7-2 at p. 34-38, Tr. 33-37)." [Dkt. 13 at 8.] This is directly contradicted by the Commissioner's statement a few pages earlier that one of the factors the ALJ considered in making her subjective symptom determination was Claimant's "minimal treatment history, consisting of medication for her migraine headaches and psychotherapy for her nonepileptic seizures and sporadic visits to her neurologist for both impairments." *Id.* at 5. More importantly, it is belied by the ALJ's own words, set forth above. In the paragraphs in which the ALJ explains her subjective symptom determination, the ALJ noted her failure to comply with treatment recommendations three times. *See* Dkt. 7-2 at 37 ("These seizures were noted to be controlled in the past with psychotherapy, but she has not been in the therapy in many years. She was repeatedly encouraged to seek out psychological/ psychiatric treatment but engaged in only three audio therapy sessions in December 2022."); ("The claimant asserts the onset of disability in March 2021; however, there is no evidence of any treatment between July 2020 and April 2022. During the period at issue, the only treatment

she had consists of two routine yearly neurology follow ups in April 2022 and April 2023 and three therapy sessions in December 2022."); ("The therapist advised her to move up her medication management appointment, but she did not appear until her routine yearly neurology follow up in April 2023 . . . .").[5] There is no reasonable way to read the ALJ's decision as not relying on the fact that Claimant did not undergo more psychological or psychiatric treatment as a main reason for the finding that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [Dkt. 7-2 at 37.]

Finally, the Commissioner argues that "[t]he ALJ's analysis of a claimant's allegations does not need to be flawless: '[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are.'" [Dkt. 13 at 11 (quoting *Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) (emphasis in original) and citing *Sanders v. Astrue*, 894 F. Supp. 2d 1100, 1112 (N.D. Ind. Sept. 6, 2012) (the ALJ gave other sound reasons for finding the claimant not entirely credible such that error regarding treatment gaps was harmless). Perhaps under some circumstances the court can simply ignore the ALJ's failure to comply with her obligations under Rule 16-3p and assume that if she had properly complied with those obligations she would have reached the same conclusion, but this is most certainly not one of those circumstances, because most of the other "reasons" given by the ALJ to support her subjective symptoms assessment are also flawed.

---

[5] This recommendation was made in December 2022. It is entirely possible that Claimant reached out to her neurologist but could not get an appointment earlier than the April 26, 2023, appointment that she already had. The ALJ did not inquire whether Claimant attempted to get an earlier appointment before holding her failure to do so against her.

11

First, the ALJ noted Claimant "takes no medication for seizures," [Dkt. 7-2 at 37], but there is no suggestion in the record that medication would be appropriate for the type of seizures Claimant has, so that is not a reason to discount their severity. The ALJ also noted that Claimant takes venlafaxine for her anxiety and depression and that she "has been on the same dose for many years" but also that she "requested in April 2023 that her venlafaxine dose be increased, and this was provided." *Id.* The import of that observation is unclear. The ALJ similarly notes that Claimant's migraine medication, Topamax, has been "prescribed at the same dose for several years and without change during the period at issue"[6] and that in April 2022 Claimant told her neurologist that she did not want to add any further medication at that time. As noted above, Claimant had tried another migraine medication, Emgality, which was noted to give her "significant improvement" in 2020, [Dkt. 7-7 at 136], but after using it for a year she "lost her co-pay assistance and [could] not afford to use it any further," *id.* at 133. The ALJ did not inquire or consider why Claimant might not have thought it was worthwhile to explore additional new migraine medications. The ALJ also noted a variety of normal findings by Claimant's neurologist, [Dkt. 7-2 at 37], but none of those normal findings contradict Claimant's testimony about her symptoms. Finally, the ALJ found that Claimant's daily activities "appear inconsistent with her asserted levels of symptom frequency and severity," [Dkt. 7-2 at 38], but this wholly ignores that fact that Claimant described doing the daily activities the ALJ points to on days when she does not have or is not recovering from a seizure and does not have a migraine.

---

[6] The Undersigned notes that Claimant's neurologist characterized her dose as "fairly high." [Dkt. 7-7 at 133.]

12

Claimant does not claim to be incapacitated every day, and it is not inconsistent for her to be able to engage in activities on her good days and unable to do so on her bad days.

That leaves the following observation by the ALJ:

> The claimant has reported significant medication side effects, but there is no evidence of any reports of medication side effects to her prescribing medical provider. The claimant was noted to have told her therapist that she did not feel her medication for depression and anxiety was helpful, but she also admitted she had not been consistent with taking her medication in part due to uncomfortable side effects. The therapist advised her to move up her medication management appointment, but she did not appear until her routine yearly neurology follow up in April 2023 and made no mention at that time of any medication side effects or inconsistent compliance with prescribed medication.

*Id.* Assuming that Claimant's reporting of side effects to her therapist and apparent failure to report those side effects to her neurologist, who prescribed those medications, calls into question Claimant's credibility, the fact that one of the ALJ's many cited reasons for discrediting Claimant's subjective symptom allegations might be valid is not "enough" of a reason to avoid remand. In other words, the errors in the ALJ's subjective symptom assessment in this case are not harmless.

The Undersigned finds that this case must be remanded for the ALJ to comply with SSR 16-3p and to properly consider and support her subjective symptom evaluation. Also on remand, the ALJ shall consider Dr. Snook's August 2020 opinion. *See* [Dkt. 7-7 at 149].

### V.  Conclusion

For the reasons stated above, the Magistrate Judge **RECOMMENDS** that the Commissioner's decision be **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

Any objections to this Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file

objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

    SO ORDERED.

Dated: 26 NOV 2025

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.